# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PROSIGHT-SYNDICATE 1110 AT LLOYDS**  **PLAINTIFF/COUNTER-DEFENDANT**
*Subscribing to Policy No. PR2015MFB00132*

**V.**  **CAUSE NO. 3:17-CV-885-CWR-LRA**

**RST WESTWICK, LLC**  **DEFENDANT/COUNTER-CLAIMANT**

## ORDER

RST Westwick, LLC ("Westwick") has filed a motion for partial summary judgment seeking declaratory relief for the validity of an appraisal award.[1] It also seeks immediate payment of the award's full amount. Having reviewed the record and applicable law, the Court is ready to rule.

**I.  Factual and Procedural History**

On February 23, 2016, Westwick suffered storm damage to its property. Westwick submitted a claim to its insurer, Prosight-Syndicate 1110 at Lloyds ("Prosight"). The parties agreed that coverage existed for hail damage. They disagreed, however, as to the amount of damage. Prosight's independent adjusting firm, Engle Martin & Associates, determined the repairs to be $16,290.87, which did not exceed the $25,000 hail and wind deductible. The parties then engaged in the appraisal process set forth in the insurance policy: each selected an appraiser and then the appraisers together selected an umpire. The appraisal panel consisted of Westwick's appraiser Bruce Fredrics, Prosight's appraiser Randy Warren, and the mutually-agreed-upon

---

[1] Westwick's motion, if granted in its entirety, would result in disposal of this case. As such, the Court will treat this motion as one for full summary judgment.

umpire David Hawkins. [2] During the appraisal process, Fredrics also retained a consultant, Dexter Brown, to assist in the appraisal process.

On October 6, 2017, the umpire issued an appraisal award of a replacement cash value (RCV) amount of $1,429,554.26, with depreciation resulting in an actual cash value (ACV) amount of $1,402,642.75. The award also included a directive for the parties to split a $3,000 "consultant's fee." Two agreed. David Hawkins and Bruce Fredrics signed the award—Randy Warren did not. As Westwick notes, the record does not reflect that Warren ever submitted a written value of loss. Prosight subsequently filed this suit seeking to invalidate or, in the alternative, modify the appraisal award. Westwick now seeks partial summary judgment confirming the validity of the appraisal award. Westwick also requests that the Court direct Prosight to immediately issue payment of the full amount of the award.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quotation marks and citation omitted). The moving party bears the initial burden of identifying the basis for its motion and the portions of

---

[2] The policy provided that the appraisers would state separately the value of the property and amount of loss. If they did not agree, the appraisers would submit their differences to the umpire. A decision agreed to by any two would be binding. The parties were responsible for paying its chosen appraiser and the other expenses of the appraisal and umpire would be divided equally. Notwithstanding the appraisal process, under the policy the insurer retained the right to deny the claim.

the record that support it. *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 1996).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *See Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted). In an insurance case, where the contract is clear and unambiguous, the Court may grant summary judgment based upon the plain language of the contract. *See Shelton v. American Ins. Co.*, 507 So. 2d 894, 896 (Miss. 1987) (citation omitted).

## III. Discussion

Prosight argues that the appraisal award is invalid because Fredrics and Hawkins acted improperly by designating Brown as an "independent consultant" (who was in fact not independent), splitting Brown's fee among the parties, and colluding between themselves through *ex parte* communications during the appraisal process. Prosight then asserts that even if the appraisal award is valid, applicable policy provisions reduce the amount owed and the depreciation amount was incorrectly calculated. Summary judgment is thus improper, Prosight contends, because there are genuine issues concerning the conduct of the appraisal panel. Also, mistakes of fact in the calculation of the amount of the appraisal award preclude summary judgment.

As this case is proceeding under the diversity jurisdiction of this Court, in determining the validity of the appraisal award the Court must look to the substantive law of Mississippi. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). State law is determined by looking to the

decisions of the state's highest court. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.,* 193 F.3d 340, 342 (5th Cir. 1999).

It must first be noted that "[i]n Mississippi as in other states, it is difficult for a [party] to succeed in impeaching an award made by disinterested appraisers. Mississippi law favors amicable settlements of controversies without court involvement." *Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 350 (5th Cir. 1978) (citations omitted). Consequently, as the Mississippi Supreme Court has explained, "an appraisal is presumptively correct but . . . the court may set aside an appraisal where the award is so grossly inadequate as to amount to fraud in effect, although fraud is not charged, or where the appraisers were without authority, or where there is a mistake of fact or to prevent injustice." *McElroy v. Evanston Ins. Co.*, No. 3:14-CV-180-CWR-FKB, 2016 WL 2726859, at *3 (S.D. Miss. May 6, 2016) (citing *Munn v. Nat'l Fire Ins. Co. of Hartford,* 115 So. 2d 54, 58 (Miss. 1959)).

### A. Validity of the Appraisal Award

Prosight claims that Brown's involvement in the appraisal process, along with the umpire's directive to split his fee, raises serious questions about the fairness and impartiality of the appraisal proceedings. Prosight further argues that the *ex parte* communications between Fredrics and Hawkins were improper and led to an invalid appraisal award. The Court will consider each argument in turn.

#### 1. Dexter Brown's Involvement in the Appraisal Process

At the request of Hawkins, Fredrics retained Dexter Brown to serve as a consultant in the appraisal process. Warren was aware of Brown's involvement long before expressing any opposition. Warren first became aware of Brown's involvement in an email on May 1, 2017. In the email, Fredrics informed Warren that Westwick approved an independent consultant to

4

provide a second opinion in the appraisal. Fredrics further informed Warren that he would wait until after he received Brown's report to complete his own estimate for the umpire. Docket No. 48-2. In response to Warren's inquiry on the identity of the consultant, Fredrics stated that Brown was a former general contractor who specialized in roofing and remodeling. Warren expressed no opposition at this point, nor did he request to meet with Brown.

A week later, Fredrics told Warren in an email that Brown had completed his inspection and given Fredrics his findings verbally. Fredrics also attached his own findings to the email and requested that Warren advise of any errors. Docket No. 48-3.[3] Ten days after that, Fredrics notified both Warren and Hawkins of his intention to submit a formal report from Brown. Docket No. 48-4. A June 7, 2017 email from Warren to a Prosight representative stated, in relevant part:

> Even though [the umpire] was nominated by my opposition, I thoroughly vetted him and am still convinced that he is honest and ethical . . .. As you know, anything can happen during this procedure, but I am cautiously optimistic in the award and outcome."[4]

Docket No. 39-7.

Two months later, on August 10, 2017, Warren expressed his first sign of disapproval with Brown's involvement in the appraisal when Fredrics sent his side's two estimates to the panel. In the email, Fredrics also noted that Hawkins had "requested an evaluation from a licensed contractor who was qualified to complete all of the repair work." Docket No. 48-5. Warren replied that he was not aware that Hawkins had ever requested Brown's services. Fredrics responded, "I got my own Consultant after you and I inspected. Later, the Umpire stated

---

[3] It is apparent from this email that Fredrics had incorporated Brown's figures into his amount of loss. Fredrics provided the "rough draft" to Warren, warned that it might contain some errors as he had not had the chance to double-check for "goof or other errors." He then asked Warren to advise him if he saw anything glaring. Docket No. 48-3.

[4] At this point, Warren had been privy to Brown's involvement in the appraisal process for over a month with no expressed objection.

5

that he wanted a 'real' Contractor's evaluation, not just my estimate as a non-Contractor, and I explained that I had done that, and it was coming."[5]

The appraisal provision states that "each party will (a) pay its chosen appraiser; and (b) bear the other expenses of the appraisal and umpire equally." Docket No. 1-1. While the evidence does not tend to show that Prosight's appraiser was initially aware that Brown's opinion was requested *by the umpire* and that his services would be considered "a cost of the appraisal," nothing in the plain language of the policy or Mississippi law prohibits the umpire's actions.

Recapping, Prosight's appraiser found out about Brown's involvement in the appraisal on May 1, 2017. He expressed optimism about the outcome of the appraisal on June 7, 2017, knowing that Brown would be participating in the appraisal as Fredrics' consultant and would be submitting a report to the umpire. On August 10, 2017, Warren noted that he was not aware that a consultant's report was ever requested by the umpire, but still did not express any opposition. The Award was issued almost two months later, on October 4, 2017, at which time Warren expressed disapproval due to the inclusion of a "consultant's fee." The Court finds that Brown's inclusion in this appraisal process, along with the directive to split his fee, does not invalidate the appraisal award.[6]

        2.      <u>*Ex Parte* Communications Between Bruce Fredrics and David Hawkins</u>

---

[5] The record reflects that Warren was also a general contractor, which may explain why Hawkins did not request a second opinion or estimate from Warren as well.

[6] There is a disagreement between the parties regarding whether Warren was present when Hawkins requested another estimate from Fredrics. This factual dispute is not sufficient to invalidate the appraisal award. Prosight has not provided any case law, and the Court did not find any, that suggests that making such a request is a basis for setting aside an appraisal award. Nothing in the insurance policy suggests that Hawkins was required to inform Warren (as a fellow panel member) that he wanted another opinion from Fredrics.

Prosight contends that the appropriateness of the *ex parte* communications between Fredrics and Hawkins, evinced by several emails, must be further investigated through discovery and presented to the trier of fact. The communications at issue consist of the following: (1) an email from Fredrics to Hawkins criticizing Warren and Prosight's engineers, to which Hawkins did not respond (Docket No. 48-8); (2) an email from Fredrics to Westwick's public adjuster stating "I just spoke to the Umpire. He should have something tomorrow for me"[7] (Docket No. 48-10); and (3) an email from Fredrics to Hawkins providing the cost sheet of work done on the property's interior, prepared by a previous contractor, along with his own, much higher, estimate. Hawkins responded, "[t]hanks I will get on it." Docket No. 48-9.

Sister courts have spoken on the general appropriateness of *ex parte* communications between members of the appraisal panel:

> An appraisal is an informal process that does not involve the procedural requirements of a court proceeding. When the parties conduct an appraisal, [n]o formal trial is contemplated. It is not a common law arbitration. No judge is to instruct [the appraisers]. The whole purpose of the appraisal is to escape the delay and cost and technicality of court procedure. . . . Furthermore, once both appraisers have an opportunity to participate in the appraisal process, the eventual absence of one appraiser is not grounds to invalidate the award. The Court therefore cannot say that [the umpire's] and [the plaintiff's appraiser's] failure to include [the defendant's appraiser] in the final discussions is evidence of partiality or improper motives in the execution of their contractual duties.

*St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.,* 681 F. Supp. 2d 748, 756 (E.D. La. 2010) (quotation marks and citations omitted). In *St. Charle*s, the defendant had pointed "to nothing to indicate that substantive *ex parte* discussions between one appraiser and the umpire, without more and particularly after the umpire review[ed] both sides' materials, [was] evidence of impartiality. The contractual language contain[ed] no specific guidelines as to how the appraisers and umpire are supposed to conduct the appraisal." *Id*.

---

[7] Prosight contends that this is evidence that Fredrics knew what the award would be before its issuance.

Although *St. Charles* arose under Louisiana law, the parties have not pointed to any authority indicating that Mississippi law is any different. The terms of the policy in this case do not prohibit *ex parte* communications and the communications alone are not indicative of impartiality. As a result, Prosight has not raised a genuine issue of fact as to the validity of the appraisal award.

### B. Mistakes of Fact in the Appraisal Award Amount

The remaining questions are whether there were mistakes of fact in the amount of the appraisal award. Prosight argues that even if the appraisal award is valid, applicable policy provisions and mistakes of fact reduce the amount of the award. The subjects at issue are the roof valuation endorsement provision, the amount of depreciation included in the award, and prior water intrusion damage.

#### 1. Roof Valuation Endorsement Provision

Westwick applied an overlay of new roof membranes to the rooftops in 2014, before the storm damage. Prosight contends that there are disputed issues of fact concerning whether the age of the roof limits Westwick's recovery to its actual cash value. The roof valuation endorsement provision states, in relevant part:

> **A.** Paragraph **7.b.** of the **Valuation** provision under Section **E. Loss Condition** is amended by the addition of the following:
> **(4)** "Roofs and/or Roofing Systems" which are:
> **(a)** 15 years of age or older unless made of Clay or Cement; or
> **(b)** 12 years of age or older unless made of Clay or Cement and located in the State of Texas
> The following applies with respect to loss or damage by a Covered Cause of Loss to the building or structure described in the Declarations.
>
> Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.
>
> **B.** For the purpose of this endorsement, "Roofs and/or Roofing Systems" means:

8

> **1.** The roofing material exposed to the elements;
> **2.** The underlayments applied for moisture protection; and
> **3.** Decking, roof doors, roof vents, roof turbines, and all strippings, flashings and edging required in the replacement of the roofing material or underlayments.

Docket No. 1-1.

It is unclear whether Westwick removed the prior roofs when it applied the overlay. If it did not, as Prosight believes, then Prosight contends that all of the roofing systems are more than 15 years old. Prosight contends that because the actual age of the roof is unclear, this policy provision may limit the appraisal award to actual cash value.

Westwick interprets this provision differently. Westwick argues that if the roof "components were *required* in the overlay process, [as mentioned under Section B(3)], it is axiomatic that those components were replaced at the time the overlay was done." Docket No. 57 at 10. Westwick further contends that because it is undisputed that the roof surfacing is only four or five years old, "it would be illogical for this provision to apply solely to valuation of roof surfacing simply because the underlying decking and roof vents (which were not required to be replaced when replacing the underlayments for moisture protection) were older than 15 years." *Id*.

The Court is persuaded by Westwick's argument. There is no dispute that the overlay of roof membrane was done in 2014. This is part of the roofing system. The age of the old roof that may or may not exist under the roof membrane does not create a genuine dispute for summary judgment purposes.

### 2. Amount of Depreciation

Secondly, Prosight argues that the amount of depreciation included in the appraisal award is grossly inadequate. Prosight states that it intends to designate an expert to testify regarding the

proper amount of depreciation that should be applied to an award of this size in support of this, but does not provide any evidence for why it is inadequate. In response, Westwick correctly asserts that unsupported allegations may not form the basis for a defense for summary judgment. It is well settled that a party may not rely upon mere allegations, but must set forth specific facts showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). Simply asserting that an expert will eventually explain to the Court how the amount of depreciation is wrong is not specific enough to overcome summary judgment.

### 3. Prior Water Intrusion Damage

The policy contains a provision that prohibits coverage for preexisting water intrusion damage repairs. Because the award does not state whether it includes prior water intrusion damage, Prosight argues that an issue of material fact exists as to the excessiveness of the award. As Westwick correctly notes, there is no requirement in the appraisal provision that the award itemize its coverage. The purpose of the appraisal process is for practitioners, not the Court, to determine the appropriate amounts of needed repairs in accordance with the policy. Furthermore, the Fifth Circuit has recognized that no Mississippi authority existed interpreting a requirement to itemize. *Mitchell*, 579 F.2d at 351. If Prosight wanted the loss to include each specific loss the award covered, it should have included a requirement to do so in the policy. *See, e.g.*, *id*. at 346; *Spann v. S. Fidelity Ins. Co.*, No. 13-6134, 2014 WL 4443527, at *2-3 (E.D. La. Sept. 9, 2014); *Michaels v. Safeco Ins. Co. of Indiana*, No. A-12-CA-511-SS, 2013 WL 12076562, at *3 (W.D. Tex. Mar. 13, 2013); *Singletary v. Allstate Texas Lloyd's*, No. H-10-CV-03990, 2012 WL 4675314, at *2 (S.D. Tex. Sept. 28, 2012). Thus, the prospect that the award may include prior interior water damage is not enough to defeat summary judgment on the excessiveness of the appraisal award.

The Court finds that Prosight has not presented any evidence creating a genuine issue as to whether the amount of the appraisal award is excessive. As a result, the Court determines that the award is valid and enforceable. Prosight is ordered to issue the full payment of the award.

## IV. Conclusion

The motion for summary judgment is granted. A separate Final Judgment shall issue on this day.

**SO ORDERED**, this the 28th day of January, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE